UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PARK INVESTMENT, INC.,
A Michigan corporation,

       Plaintiff,

v.

UNITED STATES DEPARTMENT
OF AGRICULTURE,

       Defendant.
_____/

Case No.
Honorable
Magistrate Judge

## COMPLAINT

NOW COMES Plaintiff, Park Investment, Inc., through its attorney, Jonathan D. Abrahams, and for its Complaint against Defendant United States of America Department of Agriculture, states as follows:

### PARTIES

1. Plaintiff is a Michigan corporation doing business as a gas station and food mart at 22601 John R Rd., Hazel Park, Michigan.

2. Defendant United States Department of Agriculture (hereinafter "USDA") is a federal governmental department which administers the Supplemental Nutrition Assistance Program (hereinafter "SNAP") and its implementing regulations.

### JURISDICTION AND VENUE

3. This Court has jurisdiction over this action under 7 U.S.C. § 2023 and its implementing regulation at 7 C.F.R. § 279 and 28 U.S.C. §§ 1331, 1346.

1

4. Venue in this district is proper under 7 U.S.C. § 2023 and 28 U.S.C. § 1391b because the conduct that give rise to this cause of action occurred in this district, and because Plaintiff and Defendant USDA conduct business in this district.

## FACTUAL ALLEGATIONS

5. Plaintiff is primarily a gas station and food market.

6. Pursuant to the Letter at Exhibit A, on July 16, 2025 Defendant USDA informed Plaintiff that its authorization to participate as an authorized retailer in SNAP was being suspended for six (6) months because it did not offer for sale a variety of foods in sufficient quantities on a continuous basis and was found to carry too few items in the four staple food categories.

7. The basis of Defendant USDA's action was erroneous and not supported by credible evidence and Defendant USDA's determination was in violation of 7 C.F.R. §279.7 and 7 U.S.C. §2023 and should be reversed.

8. Defendant USDA acted in an arbitrary and capricious manner when it incorrectly determined Plaintiff violated the SNAP requirements.

## COUNT I – REVIEW OF FINAL AGENCY ACTION OF USDA

9. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 8 as though fully set forth herein.

10. Judicial review *de novo* of Defendant USDA's decisions are authorized by 7 U.S.C. § 2023 and its implementing regulation 7 C.F.R. § 279.7.

11. Defendant USDA's determinations was erroneous and not a proper basis for the Defendant USDA to temporarily suspend Plaintiff's SNAP authorization.

12. As a result of Defendant USDA's conduct, Plaintiff requests that this Court review the administrative decision regarding Plaintiff's eligibility to accept SNAP benefits *de novo* and reverse the determination.

## COUNT II – INJUNCTIVE RELIEF

13. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 12 as though fully set forth herein.

14. Pursuant to 7 U.S.C. § 2023(a)(17), Plaintiff is entitled to injunctive relief staying the implementation of the decision of Defendant USDA until the judicial review *de novo* is completed.

15. Pursuant to 7 U.S.C. § 2023(a)(18), if an injunction is not granted, Plaintiff will suffer damages that it will not be able to recover.

16. Therefore, based on the equitable and statutory authority of this Court, an Injunction should be entered until the judicial review is completed.

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

i. A *de novo* review of Defendant USDA's determination of July 16, 2025 suspending Plaintiff's ability to participate in SNAP for six (6) months;

ii. A preliminary and permanent injunction enjoining Defendant USDA from suspending Plaintiff's authorization to participate in SNAP;

iii. Reasonable attorneys' fees and costs of suit, with interest, incurred by Plaintiff in this action against Defendants herein; and

iv. Such other and further relief as the Court may deem just and proper.

Dated: August 12, 2025                                Respectfully submitted,

/s/Jonathan D. Abrahams
31550 Northwestern Hwy., Ste. 110
Farmington Hills, MI 48334
(248) 538-2900
jda@abrahamslaw.com
P46642

# EXHIBIT A



**USDA** Food and Nutrition Service
U.S. DEPARTMENT OF AGRICULTURE

Supplemental
Nutrition
Assistance
Program

Retailer Policy
Division

Administrative
and Judicial
Review Branch

Phone:
(978) 314-0046

MaryKate.
Karagiorgos
@usda.gov

July 16, 2025

George H. Esho, Owner
Park Investment, Inc.
22601 John R Rd
Hazel Park, MI 48030-1779

Dear Store Owner:

Enclosed is the U.S. Department of Agriculture (USDA), Food and Nutrition Service Final Agency Decision in response to your administrative review request postmarked April 12, 2024. Also included is a statement regarding relevant rights to a judicial review.

It is the decision of the USDA that there is sufficient evidence to support that the Retailer Operations Division appropriately withdrew the authorization of Park Investment, Inc. to participate as an authorized retailer in the Supplemental Nutrition Assistance Program (SNAP). In accordance with the Food and Nutrition Act of 2008, as amended, and SNAP regulations, the withdrawal of Park Investment, Inc. shall become effective 30 days after receipt of this letter.

Please call 877-823-4369 with general questions regarding the application process and consult the USDA website for more retailer information.

Sincerely,

*Mary Kate Karagiorgos*

Mary Kate Karagiorgos
Administrative Review Officer

Enclosure – Final Agency Decision

U.S. Department of Agriculture
Food and Nutrition Service
Administrative Review Branch

Park Investment, Inc.,

Appellant,

v.

Case Number: C0283789

Retailer Operations Division,

Respondent.

## FINAL AGENCY DECISION

It is the decision of the U.S. Department of Agriculture (USDA), Food and Nutrition Service (FNS) that the Retailer Operations Division properly withdrew the authorization of Park Investment, Inc. (Appellant) to participate as an authorized retailer in the Supplemental Nutrition Assistance Program (SNAP).

### ISSUE

The issue accepted for review is whether the Retailer Operations Division took appropriate action, consistent with Title 7 Code of Federal Regulations (CFR) Part 278, in its administration of SNAP when it withdrew the authorization of Appellant to participate in SNAP.

### AUTHORITY

7 USC § 2023 and the implementing regulations at 7 CFR § 279.1 provide that "A food retailer or wholesale food concern aggrieved by administrative action under § 278.1, § 278.6 or § 278.7 . . . may file a written request for review of the administrative action with FNS."

### CASE CHRONOLOGY

The record reflects that ownership submitted a reauthorization application to continue to participate as a SNAP retailer on November 30, 2023, wherein it estimated that staple foods accounted for two percent of total gross retail sales. The accessory "other" food items also showed an estimate of six percent of the firm's total gross retail sales. The owner estimated zero percent of its total gross retail sales came from hot food; zero percent from cold prepared food items; and 92 percent of its sales came from non-food items including gas, lottery, alcohol, tobacco, and other nonfood items. On March 29, 2024, an FNS contractor conducted a store visit to determine if Appellant met SNAP authorization criteria. The store visit report showed that the store was deficient in the dairy staple food category.

In a letter dated April 1, 2024, the Retailer Operations Division informed ownership that the authorization of Park Investment, Inc. to participate as a retailer in SNAP was withdrawn because Appellant did not meet the eligibility requirements set forth in Section 278.1(b)(1) of the SNAP regulations. The Retailer Operations Division determined that Park Investment, Inc. failed to meet Criterion A because it did not carry sufficient stocking units of dairy staple food items. The letter informed Appellant that it also failed to meet Criterion B because the store's staple food sales did not comprise more than 50 percent of its annual gross retail sales.

By letter postmarked April 12, 2024, ownership appealed the Retailer Operations Division's decision and requested an administrative review. The appeal was granted and implementation of the withdrawal has been held in abeyance pending completion of this review.

## STANDARD OF REVIEW

In appeals of adverse actions, the Appellant bears the burden of proving by a preponderance of the evidence, that the administrative actions should be reversed. That means the Appellant has the burden of providing relevant evidence which a reasonable mind, considering the record as a whole, would accept as sufficient to support a conclusion that the matter asserted is more likely to be true than not true.

## CONTROLLING LAW

The controlling statute in this matter is contained in the Food and Nutrition Act of 2008, as amended, 7 USC § 2018 and § 278 of Title 7 of the Code of Federal Regulations (CFR). 7 CFR § 278.1(l)(1) and § 278.1(k)(2) establish the authority upon which FNS shall withdraw the SNAP authorization of any firm which fails to meet established eligibility requirements.

7 CFR § 271.2 states that Retail Food Store means:

> An establishment that sells food for home preparation and consumption normally displayed in a public area, and either offers for sale, qualifying staple food items on a continuous basis, evidenced by having no fewer than [three*] different varieties of food items in each of the four staple food categories with a minimum depth of stock of three stocking units for each qualifying staple variety, including at least one variety of perishable foods in at least [two*] such categories, (Criterion A) as set forth in of this chapter, or has more than 50 percent of its total gross retail sales in staple foods (Criterion B) as set forth in § 278.1(b)(1) of this chapter as determined by visual inspection, marketing structure, business icenses, accessibility of food items offered for sale, purchase and sales records, counting of stockkeeping units, or other accounting recordkeeping methods that are customary or reasonable in the retail food industry as set forth in § 278.1(b)(1) of this chapter. Entities that have more than 50 percent of their total gross retail sales in: Food cooked or heated on-site by the retailer before or after purchase; and hot and/or cold prepared foods not intended for home preparation and consumption, including prepared foods that are consumed on the premises or sold for carry-out are not eligible for SNAP participation as retail food stores under § 278.1(b)(1) of this chapter.

---

*As currently implemented. See SNAP Retailer Policy and Management Division Policy Memorandum 2018-04 for additional information regarding the enhanced retailer standards, which were implemented on January 17, 2018. This memorandum can be found on the FNS public website at https://www.fns.usda.gov/snap/retailer-eligibility-clarification-of-criterion.

2

7 CFR § 271.2 states:

> Staple food means those food items intended for home preparation and consumption in each of the following four categories: Meat, poultry, or fish; bread or cereals; vegetables or fruits; and dairy products. The meat, poultry, or fish staple food category also includes up to three types of plant-based protein sources (i.e., nuts/seeds, beans, and peas) as well as varieties of plant-based meat analogues (e.g., tofu). The dairy products staple food category also includes varieties of plant-based dairy alternative staple food items such as, but not limited to, almond milk and soy yogurt. Hot foods are not eligible for purchase with SNAP benefits and, therefore, do not qualify as staple foods for the purpose of determining eligibility under § 278.1(b)(1) of this chapter.

7 CFR § 278.1(b)(1)(i)(A) imparts program requirements for retail food store participation, which states:

> An establishment or house-to-house trade route shall normally be considered to have food business of a nature and extent that will effectuate the purposes of the program if it sells food for home preparation and consumption and meets one of the following criteria: Offer for sale, on a continuous basis, a variety of qualifying foods in each of the four categories of staple foods as defined in § 271.2 of this chapter, including perishable foods in at least three of the categories (Criterion A); or have more than 50 percent of the total gross retail sales of the establishment or route in staple foods (Criterion B).

7 CFR § 278.1(b)(1)(ii)(A) provides that in order for a retail store to qualify for authorization under Criterion A, firms shall:

> Offer for sale and normally display in a public area, qualifying staple food items on a continuous basis, evidenced by having, on any given day of operation, no fewer than [three*] different varieties of food items in each of the four staple food categories with a minimum depth of stock of three stocking units for each qualifying staple variety and at least one variety of perishable foods in at least [two*] staple food categories. Documentation to determine if a firm stocks a sufficient amount of required staple foods o offer them for sale on a continuous basis may be required in cases where it is not clear that the firm has made reasonable stocking efforts to meet the stocking requirement."

7 CFR § 278.1(b)(1)(iii) provides that in order for firms to qualify for authorization under Criterion B:

> Firms must have more than 50 percent of their total gross retail sales in staple food sales. Total gross retail sales must include all retail sales of a firm, including food and non-food merchandise, as well as services, such as rental fees, professional fees, and entertainment, sports, games income.

7 CFR § 278.1(b)(6) regarding access states:

> FNS will consider whether the applicant firm is located in an area with significantly limited access to food when the applicant firm fails to meet Criterion A per paragraph (b)(1)(ii) or Criterion B per paragraph (b)(1)(iii) of this section so long as the applicant firm meets all other SNAP authorization requirements. In determining whether an applicant is located in such an area, FNS may consider access factors such as, but not limited to, the distance from the applicant firm to the nearest currently SNAP authorized firm and transportation options. In determining whether to authorize an applicant despite its failure to meet Criterion A and Criterion B, FNS will also consider factors such as, but not limited to, the extent of the applicant firm's stocking deficiencies in meeting Criterion A and Criterion B and whether the store furthers the purposes of the Program. Such considerations will be conducted during the application process ....

---

*As currently implemented. See SNAP Retailer Policy and Management Division Policy Memorandum 2018-04 for additional information regarding the enhanced retailer standards, which were implemented on January 17, 2018. This memorandum can be found on the FNS public website at https://www.fns.usda.gov/snap/retailer-eligibility-clarification-of-criterion.

3

7 CFR § 278.1(l)(1) reads, in part: FNS may withdraw the authorization of any firm authorized to participate in the program for any of the following reasons:

> (i)The firm's continued participation in the program will not further the purposes of the program; (ii) The firm fails to meet the specification of paragraph (b), (c), (d), (e), (f), (g), (h), or (i) of this section; (iii) The firm fails to meet the requirements for eligibility under Criterion A or B, as specified in paragraph (b)(1)(i) of this section...for the time period specified in paragraph (k)(2) of this section; or, for co-located wholesale/retail firms, the firm fails to meet the requirements of paragraph (b)(1)(vi) of this section, for the time period specified in paragraph (k)(2) of this section;"

7 CFR § 278.1(k)(2) reads, in relevant part: FNS shall deny the application of any firm if it determines that:

> The firm has failed to meet the eligibility requirements for authorization under Criterion A or Criterion B, as specified in paragraph (b)(1)(i) of this section.... Any firm that has been denied authorization on these bases shall not be eligible to submit a new application for authorization in the program for a minimum period of six months from the effective date of the denial.

## APPELLANT'S CONTENTIONS

Appellant made the following summarized contentions in its April 12, 2024, administrative review request, and additional information provided on July 2, 2025, and July 3, 2025, in relevant part:

- Appellant requests reconsideration and a chance to restock the store for another visit.
- Appellant has been SNAP authorized for many years without any violations.
- COVID negatively affected the business, and it is still suffering from its effects.
- Once the owner became aware of the issue, he restocked the store with milk, meat, groceries, cereal, and fruits and vegetables.
- By deducting gasoline sales, the store meets Criterion B.

Appellant submitted a letter from its attorney, taxes for the business, and photos.

The preceding may represent only a summary of the Appellant's contentions presented in this matter. However, in reaching a decision, full attention was given to all contentions presented, including any not specifically recapitulated or specifically referenced.

## ANALYSIS AND FINDINGS

### Criterion A

Federal regulations at 7 CFR § 278.1(b)(1)(ii) state that to qualify for SNAP authorization under Criterion A, a firm must offer for sale no fewer than **three** different varieties of food items in each of the four staple food categories with a minimum depth of stock of three stocking units for each variety. This means that retail stores must have qualifying staple food items displayed in a public area on a continuous basis at the time of the store visit to qualify for SNAP authorization under Criterion A. The record shows that the firm was deficient in the dairy staple food category with only one qualified variety (milk).

Appellant requests reconsideration and explains that it is now restocked. Appellant provided photos to show that it is now fully stocked. The purpose of this review is to either validate or to invalidate the earlier determination of the Office of Retailer Operations and Compliance, and that it is limited to what circumstances existed at the time of the denial action. Therefore, it is not within the authority of this review to conduct another store visit and/or consider what subsequent remedial actions may have been taken or will be taken in the future so that a store may begin to comply with program requirements. Therefore, Appellant's contention, that it took corrective action to meet the stocking requirements, does not provide any valid basis for reversing the withdrawal determination. Moreover, the photos do not show that Appellant meets eligibility now because it does not have **three** stocking units of two additional varieties of dairy staple foods items.

Based on the evidence, Appellant did not carry sufficient staple food inventory continuously as required under Criterion A on the day of the store visit.

**Criterion B**

Appellant explains that if its gasoline sales are deducted, then it does meet Criterion B. In the event of a firm's failure to meet the requirements of eligibility under Criterion A, federal regulations require that the firm's eligibility also be evaluated under Criterion B. To qualify for authorization under Criterion B, more than 50 percent of a retail store's total annual gross retail sales must come from the sale of staple foods. Since its total gross sales, the gas sales cannot be deducted to determine eligibility. Based on the FNS store visit photographs, the Retailer Operations Division determined that Appellant, a gas station convenience store, was also ineligible for authorization under Criterion B according to 7 CFR §278.1(b)(1)(iii). Appellant's SNAP reauthorization application estimates that two percent of its gross annual retail sales come from the sale of staple foods. Thus, the evidence supports that the Retailer Operations Division correctly determined that Appellant was not eligible under Criterion B.

**Need for Access**

SNAP regulations at 7 CFR § 278.1(b)(6) state that FNS will consider whether the Appellant firm is in an area with significantly limited access to food when the firm fails to meet Criterion A or Criterion B if it meets all other eligibility requirements. The Retailer Operations Division determined that the Appellant firm did not qualify for SNAP authorization under this provision.

**No Previous Violations**

Appellant explains that it has been authorized for many years without any violations. There is no provision in the Act or regulations that reverses or reduces a period of ineligibility based upon a lack of prior violations by a firm and its owners.

**Appellant Hardship**

Appellant explains that the business has been suffering since COVID. There is no provision in the SNAP regulations for waiver or reduction of an administrative action based on possible

5

economic hardship to the firm resulting from imposition of such penalty. To allow store ownership from being excused from its six-month withdrawal based on purported economic hardship to the firm would render virtually meaningless the enforcement provisions of the Food and Nutrition Act of 2008 and the enforcement efforts of the USDA. Moreover, giving special consideration to economic hardship to the firm would forsake fairness and equity, not only to competing stores and other participating retailers who are complying fully with program regulations, but also to those retailers who have been withdrawn from the program in the past for similar reasons.

## CONCLUSION

The Retailer Operations Division's decision to withdraw the authorization of Appellant to participate as a retailer in the SNAP is sustained. In accordance with 7 CFR § 278.1(k)(2) Appellant will not be eligible to participate in the SNAP for a period of six months. The withdrawal shall become effective 30 days after receipt of this decision.

## RIGHTS AND REMEDIES

Applicable rights to a judicial review of this decision are set forth in 7 USC § 2023 and 7 CFR § 279.7. If a judicial review is desired, the Complaint, naming the United States as the defendant, must be filed in the U.S. District Court for the district in which the Appellant's owner resides or is engaged in business, or in any court of record of the State having competent jurisdiction. If a complaint is filed, it must be filed within 30 days of delivery of this decision. The judicial filing timeframe is mandated by the Act, and this office cannot grant an extension.

Under the Freedom of Information Act, we are releasing this information in a redacted format as appropriate. FNS will protect, to the extent provided by law, personal information that could constitute an unwarranted invasion of privacy.

Mary Kate Karagiorgos
ADMINISTRATIVE REVIEW OFFICER

July 16, 2025